UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

               DOCKET NO.
vs.               5:09CR 2630001(DNH)

EZELL HICKS, JR.,

     Defendant.
_____

## SENTENCING MEMORANDUM

DATED: March 5, 2010       Respectfully submitted,


               ALEXANDER BUNIN
               Federal Public Defender


    By:

               James F. Greenwald, Esq.
               Assistant Federal Public Defender
               Bar Roll No. 505652
               Clinton Exchange, 3rd Floor
               4 Clinton Square
               Syracuse, New York   13202
               (315) 701-0080

Defendant, Ezell Hicks, Jr., by and through his attorney, James F. Greenwald, Esq., Assistant Federal Public Defender, submits the following for consideration of the Court in connection with sentencing in the above entitled matter:

**SENTENCING GUIDELINES CALCULATION**

The defense objects to the guideline calculation contained in the Presentence Investigation Report (hereinafter PSR). Defendant purchased a .22 caliber rifle from some kids on the street. Within minutes of the purchase, Mr. Hicks was stopped by police for a minor traffic violation. The rifle was in plain view between the driver and passenger seats of the car. It was not loaded and Mr. Hicks possessed no ammunition. He was originally charged with a misdemeanor under state law and the case was ultimately adopted by the federal authorities as a felony. While Mr. Hicks does have an extensive criminal history, this is the first time that he has ever been charged with an offense involving firearms.

As he explained to the Probation Officer and to the Court at the time of his plea, Mr. Hicks was not sure what he would do with the rifle, but that he thought he might be able to turn a profit by surrendering it to the police for cash as part of an occasional gun amnesty program. He stated that he did not realize his status as a convicted felon made it illegal for him to possess a long gun. He was also motivated by his desire to get the gun away from the kids who had it.

Since Mr. Hicks was not involved in any criminal activity, and he did not possess the rifle for any unlawful purpose, U.S.S.G. §2k2.1(b)(5) applies. The appropriate base offense level is, therefore, decreased to level 6, and the total offense level is 4, after adjustment for acceptance of responsibility. Based upon a Total Offense Level 4 and Criminal History Category III, the advisory guideline sentencing range is 0-6 months. As of the sentencing date, the defendant will

have served 304 days in custody for this charge and this exceeds the high end of the advisory range.  Mr. Hicks should be sentenced to no more than the time that he has already served.

**PERSONAL CHARACTERISTICS**

Mr. Hicks, Jr. is a 46 year old man with an extensive mental health history, including at least one documented suicide attempt, numerous visits at the local psychiatric emergency program, outpatient treatment and at least one inpatient psychiatric admission.  While he is not loud and obnoxious, he does tend to present as a nervous and agitated individual.  He finds it difficult to sit quietly, and he tends to become impatient.  This behavior is consistent with his primary psychiatric diagnosis of Post Traumatic Stress Disorder.  He has a history of domestic violence (also consistent with the diagnosis of PTSD), however, the frequency and severity of these episodes has decreased significantly over time.  Mrs. Hicks describes Ezell as "...a quiet, introverted person who is very protective of his family".  She states he was doing very well prior to his arrest for the instant offense and believes he has matured considerably over the past ten years.  Mrs. Hicks plans to reunite with the defendant upon his release from imprisonment.  (PSR ¶39)

Mr. Hicks also has a history of substance abuse and his drug of choice appears to be marijuana.  This would be consistent with a tendency to self-medicate as a means of alleviating the symptoms which he experiences as a result of his PTSD.  Although his wife did tell the police on one occasion that Mr. Hicks was using crack cocaine, he vehemently denies using cocaine in any form.  When he was charged in this Court, he was referred into the HIIP program, with a diagnosis of marijuana dependence.  After completing the HIIP program, he was released to an inpatient aftercare program at the Willows in Syracuse and was discharged from that

program after a few days.  According to Mr. Hicks, he had problems sitting still during group sessions, and he needed to get up and walk around.  On one occasion he broke the facility rules by going outside the building with his wife to help her carry a package.  He indicates these infractions resulted in his discharge.

It appears that Mr. Hicks lacks insight into his substance abuse issues.  Monitoring and treatment are indicated.  A mental health evaluation and treatment should be initiated before or at the same time as drug treatment.  Appropriate psychiatric medication could alleviate the symptoms which contribute to the defendant's tendency to self-medicate with the marijuana.

## POST-*BOOKER* SENTENCING  CONSIDERATIONS

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the United States Sentencing Guidelines, as previously employed, were unconstitutional because they deprived the defendant of his or her Sixth Amendment right to a jury trial on the factual determinations made by the court at sentencing that could have the effect of enhancing the defendant's sentence.  Accordingly, the *Booker* remedy opinion rendered the Guidelines advisory.  *See United States v. Kimbrough*, 552 U.S.___, 128 S.Ct. 558, 564 (2007) ("We hold that, under *Booker,* the cocaine Guidelines, like all other Guidelines, are advisory only . . ..").

Although formerly mandatory, the Guidelines "now serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough*, 128 S. Ct. at 564; *see also Gall v. United States*, 552 U.S.___, 128 S.Ct. 586, 602 (2007) (same).  As the Court recently clarified in *Gall,* "the Guidelines should be the starting point and the initial benchmark" in determining a sentence.  *Gall,* 128 S.Ct. at 596 ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  Although district courts

must "give respectful consideration to the Guidelines," "the Guidelines are not the only consideration." *Kimbrough,* 128 S.Ct. at 570; *Gall,* 128 S.Ct. at 596.  Instead, district courts must "tailor the sentence in light of other statutory concerns as well." *Id*. (quoting *Booker,* 543 U.S. at 245-246).  These statutory concerns included the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for–

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines– . . .

(5) any pertinent policy statement– . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In addition to restoring importance to these factors, *Booker* and its progeny breathed new life into the primary sentencing mandate of § 3553(a), which requires the sentencing court to impose a minimally sufficient sentence to achieve the statutory purposes of punishment–justice, deterrence, incapacitation, and rehabilitation–by imposing a "sentence sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). *See Kimbrough*, 128 S.Ct. at 570. This so-called "parsimony provision" is not simply a factor to be considered in determining a sentence; it represents a cap above which the sentencing court is statutorily prohibited from imposing, even when a greater sentence is recommended by the sentencing guidelines. *Id*.

In fulfilling this "parsimony provision," the district court judges must now consider and respond to non-frivolous arguments that the guideline sentence itself reflects an unsound judgment because it fails properly to reflect § 3553(a) considerations, does not treat defendant characteristics in the proper way, or a different sentence is appropriate regardless. *Rita v. United States,* 551 U.S. __, 127 S.Ct. 2456, 2468 (2007). Accordingly, district courts are no longer required, or permitted, to simply defer to Commission policies, and the judge "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 596-97; *see also Rita*, 127 S. Ct. at 2465 (same). Courts of appeals may not "grant greater factfinding leeway to [the Commission] than to [the] district judge." *Id*. at 2463. Even the government has "acknowledge[d] that . . . 'courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines.'" *Kimbrough*, 128 S. Ct. at 570. *See also Gall*, 128 S.Ct. at 602 (finding a sentence outside the Guidelines to be reasonable).

## CONCLUSION

The Court should impose a sentence upon Ezell Hicks, Jr. which, applying U.S.S.G. §2K2.1(b)(2), does not require him to be incarcerated for any additional time. Any post release supervision should mandate mental health treatment before or at the same time as any appropriate substance abuse treatment.

DATED: March 5, 2010                             ALEXANDER BUNIN
                                                      Federal Public Defender

                               By:    *s/ James F. Greenwald*
                                                       James F. Greenwald, Esq.
                                                       Asst. Federal Public Defender
                                                       Bar Roll No: 505652
                                                       Clinton Exchange, 3rd Floor
                                                       4 Clinton Street
                                                       Syracuse, New York   13202
                                                       (315) 701-0080

TO:    Ransom Reynolds, Esq., AUSA
         Michael Kester, USPO